IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TIMOTHY G. CHAMBOSSE AKA
TIMOTHY G. KNOBLOCK                                                              PLAINTIFF

V.                                     NO. 11-3054

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Timothy G. Chambosse, a/k/a Timothy G. Knoblock, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff filed his applications for DIB and SSI on December 12, 2008, alleging an inability to work since November 24, 2008, due to bipolar disorder, arthritis in his knees and right shoulder, and "heart." (Tr. 145-155, 179). An administrative hearing was held on December 17, 2009, at which Plaintiff appeared with counsel, and he and his wife testified. (Tr. 28-80).

By written decision dated June 4, 2010, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe - personality disorder and right shoulder impairment. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is unable to perform overhead reaching with his right upper extremity, engage in rapid, repetitive movement of his right upper extremity or climb ladders, ropes, and scaffolds. In addition, the claimant can only occasionally kneel, crouch and crawl. Lastly, the claimant can perform work that involves only incidental interaction with others consistent with the work performed.

(Tr. 14-15). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform work as a machine tender, cleaner, and fast food cook. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 26, 2011. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff raises the following points on appeal: 1) The Commissioner erred in finding that Plaintiff's bi-polar disorder was not a severe impairment; 2) The Commissioner erred in failing to include in the hypothetical question appropriate limitations regarding Plaintiff's remaining mental abilities; 3) The Commissioner failed to meet his burden of going forward at step 5 of the sequential evaluation process. (Doc. 7).

#### A.  Plaintiff's Impairments:

The ALJ found that Plaintiff had the following severe impairments: personality disorder and right shoulder impairment. (Tr. 12). Plaintiff alleges that he suffers from bipolar disorder as a severe impairment, and relies upon several diagnoses of bipolar disorder that were given at various times by various medical care providers. One of them was a "Rating Decision" dated February 12, 2010, by the Department of Veterans Affairs, which granted a "[s]ervice connection for bipolar disorder," with an evaluation of 50 percent, effective March 31, 2009. (Tr. 251). Plaintiff contends that the ALJ did not consider the VA rating decision, "as she only noted that it existed and that a VA finding is not binding." He argues that it is correct that the VA rating decision is not binding on the Commissioner, "but it is entitled to some weight and must be

considered." (Doc. 7 at p. 5).

In her opinion, the ALJ noted the 50 percent service connected disability for bipolar disorder, and stated: "Although Mr. Chambosse may have met the statutory and regulatory requirements for a military retirement and for VA benefits based on his service-connected injuries, this does not mean that he meets the requirements for Social Security disability benefits." This statement does not necessarily mean that the ALJ did not consider the rating decision. In fact, such statement could also imply that the ALJ did consider the rating decision. Furthermore, there is other objective medical evidence in the record indicating that Plaintiff suffered from either intermittent explosive disorder or antisocial personality disorder with narcissistic traits. Dr. Efird's evaluation dated January 20, 2009, concluded Plaintiff had symptoms consistent with intermittent explosive disorder, ruling out bipolar disorder. (Tr. 262, 265).

On June 17, 2009, a Mental Diagnostic Evaluation was conducted by W. Charles Nichols, Psy.D., of The Family Psychological Center, P.A. (Tr. 413-418). In his evaluation, Dr. Nichols concluded that Plaintiff suffered from antisocial personality disorder with narcissistic traits. (Tr. 417). Dr. Nichols concluded: "Despite his allegation of being diagnosed with bipolar disorder in the past, his historical symptoms do not appear to be attributable to that condition." (Tr. 418).

Irrespective of the diagnosis, whether it be bipolar disorder, intermittent explosive disorder, or antisocial personality disorder with narcissistic traits, there is substantial evidence to support the finding that Plaintiff's mental impairment was controlled, to a great degree, by medication. Plaintiff reported to Dr. Efird that Depakote was prescribed for him while he was in the military, and that it helped to calm him down, but made him tired and sleepy. (Tr. 263).

AO72A
(Rev. 8/82)

Plaintiff reported to the VA on March 19, 2009, that he quit taking his medications the previous summer because they were making him tired "and now I get angry real quick." (Tr. 366).

On March 19, 2009, Plaintiff was prescribed Risperdol for mood stabilization. (Tr. 327). On April 15, 2009, Plaintiff reported that he was doing well, that the Risperdol had been effective, and he denied any side effects. (Tr. 346). Plaintiff further stated that his anger and agitation were "under control." (Tr. 346). He requested that he continue on the current medication regimen. (Tr. 346).

On May 7, 2009, Plaintiff asked the doctor at the VA if he could increase the Risperdol dosage because he had mistakenly taken 2 daily for 2 weeks and "felt really good, level, and calm." (Tr. 346). He again denied medication side effects, and his dosage was increased. (Tr. 346). On June 15, 2009, Plaintiff reported that the Risperdol was no longer working, and he therefore quit taking it. (Tr. 336). He was directed to re-start taking valproic acid (generic for Depakote).

On June 16, 2009, Plaintiff reported to Dr. Nichols that his anger was effectively suppressed when he was taking Depakote or Risperdol, and that he was taking Depakote regularly. (Tr. 414). Plaintiff also admitted using cannabis a few times a month. (Tr. 415).

At the hearing, Plaintiff testified he was working 15-20 hours a week at Little Caesar's. He testified that he was taking the Depakote to relax him and calm him down. (Tr. 53). He then said, "There's a few different things that they've tried with me, and nothing really seems to work, actually, and –." (Tr. 53). There is nothing else in the record to indicate that the Depakote did not work.

The Court also notes that neither Dr. Richard B.Chitsey, Plaintiff's treating physician,

nor Dr. Shannon Brownfield, who diagnosed Plaintiff with bipolar disorder, are mental health experts. "'Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist.'" Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010)(quoting Thomas v. Barnhart, 130 Fed. Appx. 62, 64 (8th Cir. 2005)(unpublished per curiam)(citing 20 CFR §§ 404.1527(d)(5); 416.927(d)(5).

The Court believes that regardless of the diagnosis, Plaintiff's mental symptoms were effectively controlled with medication. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012)(quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)).

**B. Hypothetical Question to VE:**

Plaintiff contends the ALJ erred in failing to include in the hypothetical question to the VE appropriate limitations regarding Plaintiff's remaining mental abilities. Specifically, Plaintiff refers to Dr. Chitsey's opinion that Plaintiff was unable to perform even low-stress jobs, and a Medical Source Statement from Ms. Lynn A. Outlaw, MSN, APRN, PMHN P-BC - Psychiatric Nurse Practitioner, of the Veteran's Administration, who opined that Plaintiff was markedly limited in several areas. Plaintiff argues that the limitation that was given - "perform work that involves only incidental interaction with others consistent with the work performed"- was inadequate. The VE responded by stating that the individual would be able to perform the jobs of machine tender, cleaning jobs, and fast food cooks. (Tr. 76). The ALJ then asked the VE if she further reduced Plaintiff's limitations that "there will be no overhead reaching with the upper right extremity, no climbing of ladders, ropes, and scaffolding, and only incidental interaction with others consistent with the work performed in addition to the other limitations that I had

previously identified-" (Tr. 77). The VE answered that it would not affect the machine tender job. (Tr. 78).

The Court believes the ALJ was warranted in not giving controlling weight to Dr. Chitsey's opinion because Dr. Chitsey's opinion appears to have been influenced by Plaintiff's subjective complaints, is inconsistent with the VA's award of a 50% disability, and is inconsistent with the record as a whole. See Renstrom, 680 F.3d at 1064 (holding that the ALJ properly gave treating physician's opinion non-controlling weight, where one of reasons was that his opinion was largely based on claimant's subjective complaints). The Court also believes the ALJ was warranted in not giving controlling weight to Ms. Outlaw's opinion, which indicated that Plaintiff was markedly limited in three areas. Although Ms. Outlaw was a nurse practitioner, the ALJ did state that "[t]o the extent that her opinion is consistent with the medical evidence of record and claimant's testimony, I have incorporated those limitations into the claimant's residual functional capacity as assessed." (Tr. 19). As indicated by Defendant, Ms. Outlaw's opinion regarding Plaintiff's alleged marked limitations are inconsistent with the other objective evidence of record, including her own report that Plaintiff admitted to feeling "really good, level, and calm" on an increased dose of his medication. (Tr. 346).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

### C. Jobs Plaintiff Would Be Able to Perform:

Although the ALJ limited Plaintiff to no overhead reaching with his right upper extremity, and the VE said the only job Plaintiff would be able to perform with such limitation

was the machine tender job, the ALJ nevertheless found Plaintiff would be able to perform two other jobs - cleaner and fast food cook. As noted by the Plaintiff, the Dictionary of Occupational Titles (DOT) states that the jobs of machine tender and cleaner require frequent reaching and handling, and the job of fast food worker requires constant reaching and handling. The VE testified that the limitation of no overhead reaching, no climbing of ladders, ropes, and scaffolding and further limited social interaction to only incidental interaction would not affect the machine tender jobs, but she could not say, with respect to the other jobs, the individual would absolutely never have to lift or reach overhead. (Tr. 77-78).

Although the ALJ incorrectly found that Plaintiff would be able to perform the jobs of cleaner and fast food worker, Plaintiff cannot show any resulting prejudice from the ALJ's error, since there still remains a job he would be able to perform - machine tender - of which the VE testified there are approximately 1,500 in the state and 118,800 in the nation. (Tr. 76). Remand is therefore not warranted. Samons v. Astrue, 497 F.3d 813, 822 (8th Cir. 2007)(holding that although the ALJ erred in failing to address a particular question sufficiently, the court could not see how the failure prejudiced Plaintiff and would not remand."'[absent unfairness or prejudice.'")(quoting Phelan v. Bowen, 846 F.2d 478, 481 (8th Cir. 1988; see e.g., Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)(per curiam)("This court will not vacate a judgment unless the substantial rights of a party have been affected").

Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the job of machine tender. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question

constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 11TH day of July, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE